J-A21006-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 956 EDA 2021 |

Appeal from the Order Entered April 21, 2021,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s):  CP-51-AP-0000424-2020.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED DECEMBER 17, 2021**

Appellant J.B. (Mother) appeals from order entered in the Philadelphia County Court of Common Pleas, terminating her rights to her two-year-old daughter, M.R. (the Child), pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  After review, we affirm.

The relevant factual and procedural history is as follows:  The family came to the attention of the Philadelphia Department of Human Services (DHS) in March 2019 after DHS received a report that the Child tested positive for benzodiazepines at birth.  The report alleged Mother had been self-medicating with illegally purchased drugs and that the Child experienced

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court also terminated the rights of J.R. (Father).  He did not appeal.

withdrawal symptoms. Mother admitted to DHS that she had used heroin during her pregnancy, but also said that she had been prescribed Xanax and Suboxone. DHS also learned Mother had been the subject of prior General Protective Services (GPS) reports regarding child endangerment and abandonment. Consequently, when the Child was discharged from the hospital in April 2019, DHS sought and obtained an order for protective custody. The court placed the Child with the maternal great-aunt and great-uncle.

On April 12, 2019, the trial court adjudicated the Child dependent pursuant to the Juvenile Act. Mother was referred to the Court Evaluation Unit (CEU) for drug screens and dual-diagnosis assessment. The court also referred Mother to the Achieving Reunification Center (ARC) for parenting, housing, and employment classes. Mother's court-ordered reunification goals were: 1) attend ARC to learn parenting skills, and to achieve suitable housing, and employment; 2) attain and maintain sobriety; 3) provide CUA with necessary documentation, including employment verification and the Child's birth certificate; and 4) maintain supervised visitation with the Child. Mother's progress had been minimal, and she continued to test positive for illicit drugs, so the court ordered Mother to attend a Parenting Capacity Evaluation in January 2020.

By October 2020, Mother's compliance was "moderate." For instance, Mother had participated in mental health therapy. However, Mother's drug

use was still a concern. Due to the Covid-19 pandemic, Mother was unable to provide drug screens at the CEU after February 2020. Prior to the shutdown, Mother tested negative for illicit drugs. However, DHS still believed Mother was using. Moreover, Mother's visitation never progressed to unsupervised or overnight visits, partly because Mother had not obtained appropriate housing.

DHS petitioned to terminate Mother's rights in November 2020. The court granted Mother's request for a continuance, delaying the final termination hearing until April 2021, at which point the Child had been out of Mother's care for 24 months. Mother did not attend the hearing. After taking evidence and testimony, the trial court terminated Mother's rights under Section 2511(a)(1), (2), (5), (8), and (b). Mother timely-filed this appeal. She raises three issues for our review:

1. Whether the trial court erred in terminating Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1), the evidence having been insufficient to establish [Mother] had evidenced a settled purpose of relinquishing her parental claim, or having refused or failed to perform parental duties?

2. Whether the evidence was sufficient to establish that Mother had refused or failed to perform parental duties, caused the Child to be without essential parental care, that conditions having led to placement had continued to exist, or finally that any of the above could not have been remedied?

3. Whether the evidence was sufficient to establish that termination of parental rights would best serve the needs and welfare of the Child under 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 5 (style and grammar adjusted).

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re B.C.*, 36 A.3d 601, 605-06 (Pa. Super. 2012) (citation omitted). If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support the opposite result. *B.C.*, 36 A.3d at 606 (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory

grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Instantly, the trial court terminated Mother's rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b).  We need only agree with the lower court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

Before we reach the merits of Mother's appeal, we address the Statement of Questions Involved section of Mother's Brief.  Mother's first appellate issue clearly relates to the trial court's determination under Section 2511(a)(1).  However, Mother's second appellate issue is an amalgamation, evidently intended to discuss contemporaneously the court's determinations under Section 2511(a)(2), (5), and (8).  Both DHS and the Child's advocate invite us to find waiver, citing Mother's cursory argument and lack of specific citation to these three remaining subsections. *See* Pa.R.A.P. 2119(a) (providing that the argument section must be divided into as many subparts as there are questions to be argued).  But we decline to find waiver outright.

Before she decided to consolidate her argument regarding Section 2511(a)(2), (5), and (8) in her Brief, Mother raised them individually in her Concise Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 19125(a)(2)(i). Moreover, Mother's second appellate issue speaks to various facets of each these three remaining subsections. Thus, we cannot conclude Mother's brief has so impeded our review that we must find waiver.[2] We will, however, only review those specific points contained in her Brief. To the extent Mother has abandoned various elements of the respective analyses under Section 2511(a)(2), (5), or (8), we must assume Mother has conceded those points. Finally, we note that Mother's third appellate issue addresses the court's determination under Section 2511(b), the second prong of the bifurcated termination analysis.

We turn now to the merits of Mother's appeal, and we begin our discussion with first prong of the termination analysis, Section 2511(a). Instantly, the trial court determined DHS met its burden under each of the following subsections:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either had evidenced a settled purpose of relinquishing

---

[2] We have held "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001). In such instances, we have found waiver. But here, neither this Court nor the trial court had to guess what Mother sought to appeal.

parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8).

As we need only agree with any one of these Section 2511(a) provisions, we review the court's determination under Section 2511(a)(8). Under this provision, DHS had to prove by clear and convincing evidence that: 1) the Child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the Child

continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. **See In re C.L.G.**, 956 A.2d 999, 1005 (Pa. Super. 2008).

We add that termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability to efficacy of Agency services. **In re R.A.M.N.**, 230 A.3d 423, 428 (Pa. Super. 2020) (citing **In re Z.P.**, 994 A.2d 1108, 1118 (Pa. Super. 2010)). Instead, Section 2511(a)(8) imposes a lengthier removal period of one year (as opposed to six months under (a)(5)).

Here, the only issue we must resolve was whether the conditions that led to the Child's removal or placement continued to exist.[3] The Child was removed from Mother's care after the Child tested positive for the illicit drugs Mother consumed while pregnant. Mother's lack of sobriety was a significant factor in this case. In her Brief, Mother reasons that DHS could not prove she failed to remain sober. She explains that, because the CEU was closed during the pandemic, Mother could not submit regular drug screens. Mother adds that her last screen before the Covid-19 pandemic, in February 2020, revealed that she was negative for all illicit substances. Thus, according to Mother, the

---

[3] Mother concedes the first and third elements have been met. The Child has been removed for approximately two years, far beyond the one-year statutory requirement. Mother only raised the "best needs and welfare" criterion under Section 2511(b), not under Section 2511(a)(8). We discuss that issue below.

last available evidence regarding Mother's sobriety goal was a negative screen. *See* Mother's Brief at 16.

However, the CUA caseworker testified that the Agency was still concerned Mother was abusing drugs after the negative screen in February 2020. Although Mother provided some documentation that she participated in a treatment program, there was no indication that she completed the same. Additionally, the caseworker observed track marks on Mother's arm, suggesting that Mother was using heroin. She also said Mother had appeared lethargic during recent visits with the Child, and that Mother lacked the energy she used to have with the Child. The caseworker further testified that, a mere three weeks before the termination hearing, Mother inadvertently called the caseworker and was overheard discussing her drug use; specifically the caseworker overheard Mother state that she hoped half a bag would be enough – the inference being that the bag contained heroin.

Mother's drug use also compounded other concerns. For instance, Mother's visitations with the Child never graduated to unsupervised, because DHS could not vouch for the safety of the Child. Indeed, the visitations were moved to the DHS facility, because (among other reasons), the placement caregivers could not tell whether Mother was under the influence of drugs during the visits.

Apart from Mother's illegal drug use, another cause for the Child's removal was Mother's lack of suitable housing. By the time the court held its termination hearing, Mother had yet to secure appropriate living

arrangements. Mother was residing with the Maternal Grandmother, who refused to allow DHS to complete an evaluation of the home. From what the caseworker could observe from the front porch, the home appeared to be inappropriate for a child. For one, the front window was broken and was covered by cardboard. Perhaps more importantly, there was no room for the Child to sleep, as several other individuals lived there. Mother even conceded that the home was not suitable for the Child.

On appeal, Mother argues that the trial court erred for considering Mother's lack of suitable housing. *See* Mother's Brief at 15. She cites Section 2511(b), which provides that termination "shall not be terminated **solely** on the basis of environmental factors such as housing [or] furnishings…" 23 Pa.C.S.A. § 2511(a)(b) (emphasis added). However, this provision does not forbid the consideration of a parent's living situation; rather, Section 2511(b) makes clear that such environmental factors may not be dispositive. In any event, Mother's argument is without merit.

The trial court did not terminate Mother's rights, because the front window of Mother's home had yet to be repaired. Termination was warranted under Section 2511(a)(8), because – after 24 months since the Child's removal – the conditions which led to the Child's removal continued to exist. The court was persuaded by the caseworker's testimony that Mother had failed to demonstrate her sobriety beyond her negative screen in February 2020. More generally, Mother's lack of progress on her reunification goals meant that the Child went without parental care for the entirety of her short life.

- 10 -

Although Mother sporadically addressed various issues throughout the dependency case, she never progressed to the point where she could be entrusted with anything more than supervised visitation. Therefore, we discern no error or abuse of discretion regarding the trial court's determination under Section 2511(a)(8).

We turn now to Mother's third appellate issue, which concerns the second prong of the termination analysis. Mother argues the trial court erred or abused its discretion when it determined that termination would best serve the Child's needs and welfare under Section 2511(b). Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed

- 11 -

> that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id****.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id.*** at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. ***See C.M.K.***, 203 A.2d at 264 (citation omitted); ***see also K.Z.S.***, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. ***Z.P.***, 994 A.2d at 1121. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

In this case, the trial court determined that there was no parental bond between Mother and the Child, and that termination best served the Child's needs and welfare. Upon our review, we conclude the record supports this determination. The Child was without parental care for virtually her entire

life.  Naturally, the Child is primarily attached to her kinship foster parents and looks to them to provide for her needs.  The trial court concluded that the Child would not suffer irreparable harm if Mother's parental rights were terminated.

In sum: the trial court did not error or abuse its discretion when it concluded DHS met its burden of proof that termination was warranted under Section 2511(a)(8) and (b).  Nearly two years after the Child was removed from Mother's care, the conditions that led to the Child's removal continued to exist.  Moreover, termination would best serve the Child's needs and welfare.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2021