J-S05045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRONE GERMANY | : | |
| | : | |
| Appellant | : | No. 254 WDA 2022 |

Appeal from the PCRA Order Entered January 24, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002955-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: APRIL 25, 2023**

Tyrone Germany appeals the denial of his request for relief under the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-9546. Germany maintains that his trial counsel was ineffective. We affirm.

On January 19, 2016, Germany shot and killed the victim. At a non-jury trial, the Commonwealth presented testimony from Adria Maxwell. Maxwell testified that she was in a house on the night of the killing, and Michelle Stock let the victim and Germany into the house. N.T., Trial, 12/13/16, at 10. After letting them into the house, Stock went back upstairs. *Id.* at 12. Maxwell stated that she observed the victim and Germany fighting on the floor and heard Germany tell the victim "he was going to shoot him, and [Germany] fired a shot." *Id.* at 12, 13, 15. She then observed Germany shoot the victim a second time. *Id.* at 15. Following the second shot, Maxwell ran from the house but later returned after hearing the victim on the porch "calling for [her]

to call 911." *Id.* at 15-16, 34. The Commonwealth did not call Stock as a witness.

Germany claimed self-defense and the Commonwealth admitted his recorded interview with detectives. In the interview, Germany claimed that he gave the victim money for drugs he wanted to purchase, and the victim went upstairs. Confession of Tyrone Germany, 1/29/14, at 6. The victim returned downstairs empty-handed and told Germany he was keeping the money and not turning over the drugs. *Id.* The two began to argue and the victim pushed him. *Id.* at 6-7. Germany claimed that the victim then grabbed him and placed him in a headlock. *Id.* At 7. Germany stated that the victim had a gun in his front pocket and Germany reached for it while in the headlock. *Id.* at 8. Germany claimed that he then fired the gun three times, but it only went off the third time. *Id.*

The court found Germany guilty of third-degree murder and persons not to possess a firearm.[1] Germany filed a direct appeal. In its 1925(a) opinion, the trial court stated in part, "Ms. Maxwell credibly testified that [the victim] never went upstairs[.]" Trial Court Opinion, filed 1/3/18, at 13. We affirmed the judgment of sentence. *Commonwealth v. Germany*, No. 1035 WDA 2017, 2018 WL 6695309 (Pa.Super. filed December 20, 2018). Germany did not seek further review.

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 6105(a)(1), respectively.

On November 25, 2019, Germany filed a *pro se* "Motion for Extension," which the court treated as a first PCRA petition. The court appointed counsel, but Germany later hired private counsel. Counsel filed an amended PCRA petition raising claims of ineffective assistance of counsel. Relevant to this appeal, Germany argued that trial counsel erred in failing to object to the Commonwealth's and the trial court's "twist of the evidence." Amended Petition Pursuant to the Post-Conviction Relief Act, filed 11/5/20, at 10. This evidence consisted of testimony regarding whether the victim went upstairs prior to being shot and killed. Germany also alleged that trial counsel "neglected to refute the court's reliance on Adria Maxwell's credibility amid misrepresentation of facts." *Id.* at 13. Germany also maintained that trial counsel "failed to produce a vital witness[, Michelle M. Stock,] described throughout the police reports who saw the victim come downstairs." *Id.* at 16. Additionally, Germany argued that counsel erred by failing to ask for a missing witness jury instruction based on Stock's absence from the trial.

Germany attached to his PCRA petition an affidavit from trial counsel. *Id.* at Appendix B, Unsworn Statements for Amended Petition Pursuant to the Post-Conviction Relief Act, ¶ 2. In the affidavit, counsel states that he did not object to the Commonwealth's or the court's summary of the evidence regarding the position of the victim prior to being shot by Germany because he did not believe it was "an unfair characterization of the testimony[.]" *Id.* He also stated that the court's characterization of the evidence was "supported by the evidence presented and reasonable inferences taken from the

evidence." *Id.* Regarding Stock, counsel believed that Stock "was not available to the prosecution at trial" and "her statements to police [were] damning to the defense theory of the case." *Id.* The affidavit also states that counsel "cross examined [Maxwell] in an effort to challenge her testimony and to attempt to get it to support Mr. Germany's version of the events[.]" *Id.*

The court held an evidentiary hearing on October 26, 2021. The deputy district attorney who tried Germany's case ("the DDA") testified, as well as trial counsel. Trial counsel testified similarly to his affidavit. He stated that Germany proceeded on a self-defense claim at trial. N.T., PCRA Hearing, 10/26/21, at 9. Trial counsel said that Stock's statement only corroborated "a small portion of Mr. Germany's statement[.]" *Id.* at 22. Counsel said that he did not call her as a witness because "the Commonwealth was unable to locate her . . . and her statement to the police was not entirely corroborative of Mr. Germany's testimony." *Id.* at 11. He said he did not try to locate her because he did not believe that she was a relevant witness to the defense. *Id.* at 22.

Trial counsel explained that in his view, "there were numerous issues that were not corroborated in Mr. Germany's statement and whether [the victim] went up the stairs or not was in [his] view one of the less significant things that weren't corroborated." *Id.* He testified that he did not seek a missing witness jury instruction because it was a non-jury trial and "it's not typically my practice during a non-jury trial to cite jury instructions." *Id.* at 12. He testified that he did not doubt the judge's knowledge of the law  about the missing witness jury instruction. *Id.*

Regarding the Commonwealth's statement during its closing that Maxwell testified that the victim did not go upstairs, trial counsel testified that he "considered it an interpretation of what was factually presented[.]" *Id.* at 18. He pointed out that the statement reflected the Commonwealth's view of the facts. *Id.* at 14. Counsel did not object because "I didn't think that it was a key issue in the case[.]" *Id.*

The DDA testified that on the night of the murder, when Stock initially spoke with detectives, she did not say that she saw the victim go upstairs. *Id.* at 33. He said that Stock later told detectives in an unsolicited conversation that "she had passed [the victim] on the stairs" prior to the shooting. *Id.*; *see also* Supplemental Report (Identification of Actor/Recovery of Additional Evidence), dated 1/20/16. When detectives formally interviewed Michelle Stock, she "did not mention passing [the victim] on the stairs" prior to the shooting. N.T., PCRA Hearing, at 33; *see also* Supplemental Report (Photo Array and Interview with Michelle Stock), dated 1/20/16; Supplemental Report (Interview of Michelle Stock), dated 1/21/16. The DDA was not asked about Stock's availability as a witness at trial.

Following the evidentiary hearing, the court denied Germany's PCRA petition. This timely appeal followed. The PCRA court issued a Pa.R.A.P. 1925(b) order, and Germany filed a Rule 1925(b) statement.

Germany raises the following claims:

> I.     Did defense counsel offer ineffective assistance of counsel when he failed to object and did not appeal

> on the Commonwealth and court's perverse twist of the evidence?
>
> II. Did the defense ineffectively fail to produce a vital witness described throughout the police reports who saw the victim come downstairs, in corroboration of [Germany's] confession, and fail to request the missing witness charge?

Germany's Br. at 3 (answer of trial court omitted).

The PCRA court urges us to find waiver on the ground that Germany's Rule 1925(b) statement is too vague. We decline to find waiver on this basis. The statement is not concise — it spans nine pages — and improperly "provide[s] lengthy explanations." Pa.R.A.P. 1925(b)(4)(iv). Nonetheless, it was sufficiently clear for the PCRA court to identify the two issues Germany lists in his brief and author a responsive Rule 1925(a) opinion. **See** Pa.R.A.P. 1925(b)(4)(ii).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019).

Counsel is presumed effective. **Commonwealth v. Mason**, 130 A.3d 601, 618 (Pa. 2015). To overcome this presumption, the petitioner must plead and prove that: "(1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." **Id.** The petitioner must satisfy

each prong, or the claim will fail. ***See Commonwealth v. Basemore***, 744 A.2d 717, 738 n.23 (Pa. 2000).

In his first issue, Germany claims that trial counsel rendered ineffective assistance by failing to object to the Commonwealth's "twist of the evidence." Germany's Br. at 11. He states that in its closing argument, the Commonwealth misstated the evidence by claiming that Maxwell testified that the victim never went upstairs. He maintains that the trial court repeated this alleged misrepresentation of the evidence in its opinion on direct appeal. Germany reiterates his confession and argues that counsel "did not enlighten the [c]ourt on the facts" and "never spoke up to correct the allegation that Ms. Maxwell said the victim did not go upstairs." ***Id.*** at 13. He further notes that counsel did not object to the Commonwealth's sentencing remarks, which reiterated the conclusion that the victim never went upstairs. Germany maintains that he was prejudiced by counsel's failure to object because this misrepresentation of the facts changed the evidence of the case and "tragically contributed to a Murder conviction that was affirmed." ***Id.*** at 12.

"[A] prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." ***Commonwealth v. Holley***, 945 A.2d 241, 250 (Pa.Super. 2008). "Prosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1146 (Pa. 2011).

Germany's argument does not warrant relief. In its closing argument the Commonwealth stated, "And Adria Maxwell says [the victim] never went upstairs." N.T., Trial, at 108. Maxwell testified that immediately prior to the shooting, Germany and the victim were downstairs. She then saw the two men fighting on the floor and saw Germany shoot the victim twice. Maxwell did not testify at any point that she observed the victim go upstairs. Under these facts, the Commonwealth's statement that Maxwell said that the victim never went upstairs was a reasonable inference based on evidence of record. Trial counsel was therefore not ineffective for failing to object to it. For the same reasons, counsel was also not ineffective for failing to object to the Commonwealth's comment at the sentencing hearing or challenge the court's making the inference in its direct appeal opinion. The objections underlying Germany's claim of ineffectiveness lack arguable merit. Moreover, the issue would not undermine confidence in the verdict. According to Germany's own statement, Germany spotted the gun in the victim's pocket, took it during the scuffle, and shot the victim with it. His ineffectiveness claim consequently fails.

Germany also claims that counsel was ineffective for failing to impeach Maxwell with a transcript of her call to 911, where she stated that she was upstairs when she heard the gunshot. **See** Germany's Br. at 17. He notes that the trial court found her testimony credible but maintains that trial counsel could have undermined her credibility by showing that she told the 911 operator that she was upstairs when the shooting occurred.

Germany waived this issue because it is not in his Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii). He also waived it by not putting it in his statement of questions involved. **See** Pa.R.A.P. 2116(a); **In re R.A.M.N.**, 230 A.3d 423, 431 (Pa.Super. 2020). In any event, it is meritless. Though counsel did not impeach Maxwell with her call to 911, he thoroughly cross-examined her about inconsistencies in her testimony. For example, counsel pointed out that Maxwell testified that the two men wrestled with each other on the floor but had told the police that the victim had Germany in a headlock, which was consistent with Germany's version of events. N.T., Trial, at 23. Thus, counsel challenged Maxwell's credibility. Furthermore, the court, through counsel's cross-examination, was privy to Maxwell's inconsistencies regarding what she observed the night of the murder. Moreover, as noted, Germany's statement was that he took the gun out of the victim's pocket and shot him with it. Germany has not shown prejudice.

In Germany's remaining issue, he argues that counsel was ineffective for failing to request a missing witness jury instruction for Michelle Stock. He also argues that counsel "offered ineffective assistance of counsel when he rested his laurels on the Commonwealth's efforts and failed to find this witness himself." Germany's Br. at 21. He claims that Stock's testimony would have changed the outcome of the trial because she would have testified that the victim went upstairs, and this would have corroborated Germany's testimony. **See id.** at 23. He also claims that counsel was ineffective for not calling her as a witness.

"[I]n non-jury trials, we presume the court is 'imbued with the knowledge of the law that he would have given in a formal charge in a jury case.'" **Commonwealth v. Akhmedov**, 216 A.3d 307, 321 (Pa.Super. 2019) (*en banc*). A missing witness jury instruction is proper where the "witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative[.]" **Commonwealth v. Evans**, 664 A.2d 570, 573 (Pa.Super. 1995) (quoting **Commonwealth v. Manigault**, 462 A.2d 239, 241 (Pa. 1983)). A court may deny a request for this instruction for several reasons including where the court concludes that the witness is equally available to both parties. **Id.**

Germany again fails to show prejudice. The trial court, sitting as fact finder, is presumed to have known relevant law, including the missing witness jury instruction and its applicability to the case. **See Akhmedov**, 216 A.3d at 321. Furthermore, Germany has not established that the underlying claim has arguable merit. The evidence at trial does not show that Stock was available only to the Commonwealth, had special information, or would have given non-cumulative testimony. The record therefore does not show that the principles underlying such an instruction applied here.

The claim regarding counsel's failure to call Stock as a witness likewise fails. "To prevail on a claim that trial counsel was ineffective for failing to present a witness, the [PCRA petitioner] must demonstrate that: (1) the witness existed; (2) counsel was either aware of or should have been aware

of the witness's existence; (3) the witness was willing and able to cooperate on behalf of the defendant; and (4) the proposed testimony was necessary to avoid prejudice to the defendant." **Commonwealth v. Tharp**, 101 A.3d 736, 757 (Pa. 2014) (citation omitted). "[T]he PCRA petitioner 'must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.'" **Commonwealth v. Johnson**, 966 A.2d 523, 536 (Pa. 2009) (citation omitted).

At the PCRA hearing, trial counsel explained that though Stock corroborated a small portion of Germany's statement to police, "there were numerous issues that were not corroborated in Mr. Germany's statement." N.T., PCRA Hearing, at 22. He testified that therefore he did not attempt to locate Stock because he "did not think she was a relevant witness to our defense." **Id.** Trial counsel also pointed out that "[t]he Commonwealth was unable to locate [Stock.]" **Id.** at 11.

Here, Germany did not demonstrate that Stock was willing and able to testify on his behalf or that she would have testified that the victim went upstairs. Moreover, even without her testimony, the court still had available Germany's statement that the victim went upstairs prior to their fight. Furthermore, because Stock's statement only corroborated a small portion of Germany's statement, it was a matter of reasonable trial strategy to choose not to call her as a witness. As such, Germany did not satisfy his burden to prevail on this claim of ineffectiveness as it lacks merit. **Tharp**, 101 A.3d at 757; **Johnson**, 966 A.2d at 536. We therefore affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/25/2023