J-S40017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.M.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.A.F. JR., FATHER | : | |
| | : | No. 1012 MDA 2025 |

Appeal from the Decree Entered June 18, 2025
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2024-0119a

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY PANELLA, P.J.E.:              **FILED: FEBRUARY 17, 2026**

J.A.F., Jr., ("Father"), appeals from the June 18, 2025 decree involuntarily terminating his parental rights to his biological daughter, Z.M.F., born in September of 2015.[1]  Father's court-appointed counsel, Brandy Grace Hoke, Esquire ("Counsel"), has filed a petition to withdraw and an accompanying brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).[2]  Father, acting *pro se*, filed a response to the *Anders* brief in this Court.  After review, we

---

[1] L.W. ("Mother") voluntarily relinquished her parental rights to Z.M.F. in September of 2024.

[2] The *Anders* procedure applies to appeals from decrees involuntarily terminating parental rights. *See In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992).

affirm the involuntary termination decree, deny Father's *pro se* filing, and grant Counsel's petition to withdraw.

We gather the relevant factual and procedural history of this matter from the certified record. According to A.W., Z.M.F.'s pre-adoptive kinship foster parent ("Foster Parent"), Z.M.F. has a "rare syndrome called Smith-Kingsmore Syndrome[,]" which is a "chromosomal abnormality." N.T., 9/23/24, at 31. This syndrome affects Z.M.F.'s heart, eyes, skeletal system, and hormones. *See id.* at 31-32. She also has difficulty regulating her emotions and is best served by maintaining a consistent daily routine. *See id.* at 29-31. In addition, Z.M.F. has an Individualized Education Plan. *See id.* at 28.

In approximately January of 2022, the York County Office of Children, Youth and Families ("CYF") became involved with the family due to a report regarding then-six-year-old Z.M.F.'s truancy. CYF's investigation revealed that Mother was unable to adequately manage Z.M.F.'s medical, emotional, and educational needs. *See id.* at 49. CYF could not then locate Father. *See id.* at 48-49. Father had pending felony charges lodged in 2016 involving illegal substances. *See id.* at 11; CYF Exhibit 2. According to Father, he fled from Pennsylvania in approximately July of 2016 to avoid arrest for the

aforementioned felony, along with a parole absconding charge.[3] **See** N.T., 9/23/24, at 11, 13-14, 77. Prior to leaving Pennsylvania, Father stated that his only contact with Z.M.F. was being present for her birth. **See id.** at 14. Father returned to Pennsylvania at an undisclosed time between January and July of 2022, after he learned about CYF's involvement with Z.M.F. **See id.** at 12-13. Father had no in-person contact with Z.M.F. while he was residing outside of Pennsylvania. **See id.** at 13.

A dependency hearing was held on July 25, 2022. Father testified that Z.M.F. was in his care on this date through an arrangement with Mother. **See id.** at 13, 18. Father stated that he knew about the dependency hearing but did not appear because of his active warrant. **See id.** at 22-25. Following the hearing, the court adjudicated Z.M.F. dependent and placed her with Foster Parent, with whom she has remained throughout the underlying proceedings.

Despite search efforts, CYF was unable to locate Father during Z.M.F.'s dependency. **See id.** at 52. At no point during Z.M.F.'s dependency did Father avail himself to CYF, although he was aware that she was in its custody. **See id.** at 22, 78. Consequently, the court was unable to develop permanency objectives for Father to achieve reunification. **See id.** at 58-59. Father did

---

[3] Father has an extensive criminal history, with charges dating back to 1998. **See** CYF Exhibit 2. It is unclear which prior charge was connected to Father's parole at that time.

- 3 -

not attend any of the eleven review hearings held in this case. *See id.* at 50-54. Further, we note that on January 13, 2023, the court found aggravated circumstances existed as to Father due to his lack of contact with Z.M.F. in the prior six months and his parental rights being involuntarily terminated to one of his other children. *See id.* at 52-53.

Upon returning to Pennsylvania, Father lived in Dauphin County until June 30, 2024, when he was arrested on his outstanding charges. *See* N.T., 9/13/24, at 11; N.T. 9/23/24 at 11, 77. Father was incarcerated at York County Prison, where he remained up through the subject proceeding.[4] *See id.* at 10-11. CYF established contact with Father for the very first time after his arrest. *See id.* at 56-57, 72-73.

On July 12, 2024, CYF filed a petition to involuntarily terminate Father's parental rights to Z.M.F. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The evidentiary hearing with respect to Father occurred on September 23, 2024, during which Father appeared and represented himself *pro se*. CYF presented the testimony of Father, as if on cross-examination; Foster Parent; and Brenda Perez, its caseworker. The court also gave Father the opportunity to provide narrative testimony.

---

[4] The record contains no evidence with respect to Father's minimum or maximum sentences. Father testified that he expected to be released from prison on December 30, 2024. *See* N.T., 9/13/24, at 5.

- 4 -

By decree dated and entered on September 23, 2024, the orphans' court involuntarily terminated Father's rights to Z.M.F. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Thereafter, Father, through Counsel, whom he privately retained, timely appealed the decree to this Court, which was docketed at 1552 MDA 2024. On April 15, 2025, this Court vacated the decree and remanded the case to the orphans' court to determine whether there was a conflict between Z.M.F.'s best and legal interests in light of her sole representation during the hearing by the guardian *ad litem* ("GAL"). **See In re Adoption of Z.M.F.**, 339 A.3d 410 (Pa. Super. 2025) (unpublished memorandum) (citing 23 Pa.C.S.A. § 2313(a); **In re Adoption of K.M.G.**, 240 A.3d 1218 (Pa. 2020) (holding that the orphans' court must make a conflict determination before appointing one attorney to represent a child's dual interests)). On remand, the orphans' court found that no conflict existed between Z.M.F.'s dual interests. **See** Decree, 6/18/25. On June 18, 2025, the orphans' court re-entered the involuntary termination decree.

On July 2, 2025, Counsel filed a motion to withdraw from her representation of Father, which she withdrew on July 21, 2025. Thereafter, on July 28, 2025, Father filed a *pro se* notice of appeal from prison.[5] The

---

[5] We conclude that Father's appeal was timely filed inasmuch as it was submitted to the prison authorities for mailing on July 15, 2025, which was within the 30-day appeal period. **See** Pa.R.A.P. 121(f) ("A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as
*(Footnote Continued Next Page)*

orphans' court filed a Rule 1925(a) opinion on August 8, 2025.[6] The court then appointed Counsel to represent Father by order dated August 25, 2025. *See* Order, 8/25/25. Counsel filed a petition to withdraw as Father's court-appointed attorney on September 23, 2025, along with an accompanying *Anders* brief.

When counsel seeks to withdraw pursuant to *Anders* and its progeny, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. *See In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020). To satisfy the procedural requirements in requesting to withdraw from representation, counsel must:

_____

of . . . the date the filing was delivered to the prison authorities for purposes of mailing . . .").

[6] The court requested that we dismiss this appeal as untimely. However, we have already concluded that it was timely pursuant to Pa.R.A.P. 121(f). The court also asked for dismissal because Father filed his notice of appeal *pro se* while he was represented by Counsel. We cannot dismiss on this basis inasmuch as Pa.R.A.P. 121(g) provides that "[w]here there is counsel of record, a party may file . . *pro se* . . . a notice of appeal." Pa.R.A.P. 121(g). The court's final request for dismissal is due to Father's failure to file a concise statement contemporaneously with his *pro se* notice of appeal in violation of Pa.R.A.P. 1925(a)(2)(i) and (b). We note that the court never ordered Father to file a concise statement, nor did this Court. Nevertheless, we decline to dismiss this appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747-48 (Pa. Super. 2009) (holding that a failure to file a Rule 1925(b) concise statement contemporaneously with a children's fast track appeal is a defective notice of appeal and will be "disposed of on a case by case basis" because it is a violation of a procedural rule and not an order of court); *Cf. J.M.R. v. J.M.*, 1 A.3d 902 (Pa. Super. 2010) (stating that a failure to comply with an order from the Superior Court to file a Rule 1925(b) concise statement will result in waiver of the issues on appeal).

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, Counsel has filed a petition to withdraw, wherein she avers that, following a conscientious and thorough review of the certified record and applicable legal authority, she believes Father's appeal is frivolous. In her application to withdraw, Counsel confirms that she simultaneously served Father with a copy of her *Anders* brief. The petition also affirms that Counsel served Father with a letter, which was attached to the petition, that suitably advised him of his rights to retain private counsel or raise additional arguments that he deems worthy of this Court's attention. Thus, we conclude that the procedural requirements of *Cartrette* and *Millisock* are satisfied.

In addition, our Supreme Court has set forth the following substantive requirements for *Anders* briefs:

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state

- 7 -

counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel's *Anders* brief provides a sufficient summary of the procedural and factual history of this matter, which includes citations to the record. *See Anders* Brief at 5-10. The *Anders* brief also contains an adequate discussion of the relevant law of the Commonwealth with respect to involuntary termination of parental rights. *See id.* at 3, 12, 14, 19, 21.

Further, Counsel affirms that her review of Father's case revealed no arguable claims that could support non-frivolous challenges to the subject decree. *See id.* at 11. Specifically, Counsel concludes that any claim Father would raise is frivolous because the record contains competent evidence to support the termination decree pursuant to 23 Pa.C.S.A. § 2511(a) and (b). *See id.* at 11-21. Based upon the foregoing, we conclude that Counsel's brief complies with the requirements of *Santiago*, *supra*. Thus, we conclude that Counsel has complied with the technical and procedural requirements of *Anders*.

In this case, Father has filed a *pro se* response, which we deem as an advocate's brief. *See Commonwealth v. Bennett*, 124 A.3d 327, 333 (Pa. Super. 2015). In reviewing the *Anders* brief and Father's *pro se* response, we are mindful that we are "limited to examining only those issues raised and developed in the brief." *Id.* This Court has explained:

We do not act as, and are forbidden from acting as, appellant's counsel. . . . If we conduct an independent review of the entire record, and conclude that there are no non-frivolous issues to be found anywhere therein, we have rendered the appellant's right to proceed *pro se* or to hire private counsel, meaningless. There would be no point in allowing a *pro se* or counseled filing if we had already determined any issue raised therein was frivolous.

Therefore, when an appellant, either acting *pro se* or through private counsel, files a response to the *Anders* brief, our independent review is limited to those issues raised in the *Anders* brief. We then review the subsequent *pro se* or counseled filing as we do any advocate's brief.

*Commonwealth v. Bennett*, 124 A.3d 327, 333 (Pa. Super. 2015).

Here, Counsel raises five potential issues in her *Anders* brief regarding whether the evidence was sufficient to support termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). *See Anders* Brief at 4. This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)). We will review Counsel's arguments with respect to Section 2511(a)(1) and (b) pursuant to an abuse of discretion. *See M.E.*, 283 A.3d at 829. This Court has explained:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an

appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* at 829-30 (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs

and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

The relevant provisions of the Adoption Act are as follows.

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to parental duties in the context of Section 2511(a)(1), our Supreme Court has explained:

"Parental duties" are not defined in the Adoption Act, but our courts long have interpreted parental duties "in relation to the needs of a child[,]" such as "love, protection, guidance, and support." *In re Burns*, 474 Pa. 615, 379 A.2d 535, 540 (Pa. 1977). Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. [*In re Adoption of*] *C.M.*, 255 A.3d [343,] 364 [(Pa. 2021)]. The roster

- 11 -

of such positive actions undoubtedly includes communication and association.  ***Id.*** (citing ***In re Adoption of Smith***, 412 Pa. 501, 194 A.2d 919, 920 (Pa. 1963)).  The performance of parental duties "requires that a parent exert himself to take and maintain a place of importance in the child's life."  ***Id.*** (internal citations omitted).  Fortitude is required, as a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.  ***Id.***

***In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021).

In assessing Section 2511(a)(1), orphans' courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically.  ***See id***.  However, the General Assembly's emphasis on the six months immediately preceding the filing of the termination petition indicates this timeframe is the "most critical period for evaluation" of a parent's conduct.  ***Id.***

"When considering a request to terminate parental rights under Section 2511(a)(1), a parent's failure or refusal to perform parental duties 'must be analyzed in relation to the particular circumstances of the case.'"  ***Id.***  (citing ***In re Burns***, 379 A.2d 535, 540 (Pa. 1977)).  Thus, "even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months. . ., the court 'must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination [of parental rights].'"  ***Id.*** at 593.

A finding that a parent has refused or failed to perform parental duties "will not be predicated upon parental conduct which is reasonably explained or which resulted from circumstances beyond the parent's control," but may "only result when a parent has failed to utilize all available resources to preserve the parental relationship." *Id.* at 592 (citing *Burns*, 379 A.2d at 540). With respect to a Section 2511(a)(1) analysis which involves a parent's incarceration, our Supreme Court has stated that the relevant inquiry is "whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child." *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (citing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). The "severance of a necessary and beneficial relationship [is] the kind of loss that would predictably cause

'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-10.

The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *Id.* (citing *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008)).

Our Supreme Court has further recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. Further, orphans' courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 1106.

With respect to Section 2511(a)(1), the orphans' court found the following:

> Father knew [Z.M.F.] existed, having reported having contact with her immediately after birth, no contact for a period of time, and then contact immediately prior to the adjudication. . . . [H]e has had no contact since the adjudication. . . . Father has completely avoided all dependency proceedings, and while doing so has failed to perform any parental duties, and has evidenced the settled purpose to relinquish any claim to the child.
>
> If we were to accept [F]ather's statements that he has had a home for the last two years, that he has had the financial resources available to support [Z.M.F.], and that it was his desire to maintain parental rights, it makes his conduct of abandonment even more

- 14 -

sinister. Despite being [near] York and his own admission that he [was] aware of the dependency proceeding, that [Z.M.F.] was in the care of the agency, he still did not avail himself to the [c]ourt or contact the agency or have any significant contact with his daughter. If he secretly saw his daughter at the aunt's house on one or two occasions, that contact is willfully inadequate and only further supports that he had the ability to have regular and ongoing contact and chose not to. In sum, he had already prioritized his own desire to avoid criminal process over caring and raising his child and leaving [Z.M.F.] to languish in foster care under the care of others who provided for her significant needs.

N.T., 9/23/24, at 118-19.

Our review verifies that the court's findings are well-supported by the record evidence and corroborates Counsel's conclusion that any claim Father could raise regarding Section 2511(a)(1) is frivolous. Father testified that the extent of his involvement with Z.M.F. in her first six years of life, while he was out of state, was that he "called from time to time and sent money" to Mother. N.T., 9/23/24, at 13. Father stated that, upon his return to Pennsylvania in 2022, he began residing in Dauphin County, Pennsylvania. *See* N.T., 9/13/24, at 11. Father testified that Z.M.F. was most recently in his care when she was six years old, just before the initial dependency hearing. *See* N.T., 9/23/24, at 12-13, 18. Father plainly admitted that he knew about the hearing but chose not to attend because of the potential for his arrest. *See id.* at 11, 24-25. Father also conceded that he never participated in any court hearings or contacted CYF in the two years Z.M.F. was in care because he was evading the consequences of his criminal behavior. *See id.* at 11, 21-22, 24-25, 97-98. Further, we note that there is no record evidence that Father took any

- 15 -

action with respect to his parental duties to Z.M.F. while he was incarcerated after June of 2024.

Father testified that the entirety of the contact he had with Z.M.F. since she was adjudicated dependent was one or two visits in April or May of 2024 that were not authorized by CYF or the court. *See id.* at 20-23. To the extent that the court credited Father's testimony in this regard, we discern that his visits occurred during Mother's unsupervised visitation. *See id.* Father explained that he "figured the only way" for him to see Z.M.F. was to do so without permission. *Id.* at 23.

Finally, Father maintained that he sent money and gifts for Z.M.F. during her placement. *See id.* at 25. Nevertheless, although he was aware that Z.M.F. was in CYF's custody, he testified that he did not provide the money or gifts to CYF. *See id.* at 25-26. Instead, Father stated that he gave the money and gifts to Mother and Z.M.F.'s maternal aunt. *See id.* Ms. Perez and Foster Parent testified that they never received any money or gifts for Z.M.F. from Father. *See id.* at 33-34, 58.

Based upon the foregoing, the record is clear that Father did not act with the required fortitude to perform his parental duties to Z.M.F. for two years preceding the subject petition. *See L.A.K.*, 265 A.3d at 592-93. Indeed, as the orphans' court stated, the record is unequivocal that Father prioritized avoiding prison over parenting Z.M.F. Therefore, we discern no abuse of discretion in the court's determination that termination of Father's

parental rights was warranted pursuant to Section 2511(a)(1). Accordingly,

we agree with Counsel's assessment that Father's appeal as to this subsection

is frivolous.

Turning to Section 2511(b), the orphans' court found:

The [c]ourt finds that no bond exists and no evidence was presented to show otherwise. In contrast, [Z.M.F.] is thriving in her [pre-]adoptive home. She has improved her emotional regulation, communication, and general well-being, all of which has been the result of [Foster Parent]'s efforts. She has remedied medical issues alone without the care and support of the parents who have neglected her medical needs. [Foster Parent] is wholly aware of the child's special needs and has ensured that all of the child's needs and appointments are met, both with her specialists and her regular providers, both her counselors and therapists, as well as her school and educational needs.

N.T., 9/23/24, at 125-26. The record supports the court's findings. Indeed,

there is no evidence of a parent-child bond between Father and Z.M.F. in this

case. Therefore, it was reasonable for the court to infer that none exists. *See*

*J.M.*, 991 A.2d at 324.

Rather, Ms. Perez's testimony reveals that a parental bond exists

between Z.M.F. and Foster Parent. *See id.* at 79. In addition, Ms. Perez

testified:

I think under [Foster Parent]'s care [Z.M.F.] has made a lot of progress. And there is still a lot of progress to be made throughout her life, and [Foster Parent] is somebody that can make sure that she gets what she needs.

*Id.* at 61. It is important to note that Foster Parent's testimony demonstrated

a deep understanding of Z.M.F.'s needs and how to satisfy them. *See id.* at

28-46 (Foster Parent testified that she ensures Z.M.F. attends her extensive medical appointments).

The foregoing evidence amply supports the orphans' court's conclusion that Z.M.F.'s developmental, physical and emotional needs and welfare were best served by termination of Father's parental rights. Therefore, we discern no abuse of discretion in the orphans' court's conclusion that CYF met its evidentiary burden pursuant to Section 2511(b). Accordingly, we agree with Counsel's assessment that Father's appeal as to this subsection is frivolous.

In addition, Counsel raises a potential argument related to CYF's lack of reasonable efforts because they did not provide services to Father. **See Anders** Brief at 20-21. Counsel ultimately determines that this claim is frivolous inasmuch as Father never availed himself to CYF. **See id.** In addition, Counsel asserts that an agency's reasonable efforts are not relevant at a termination hearing. **See id.** We agree that this claim is also frivolous. **See In re D.C.D.**, 105 A.3d 662 (Pa. 2014) (holding that an agency's failure to provide reasonable efforts to a parent for reunification does not impede termination of parental rights). Father intentionally did not disclose his whereabouts to CYF for substantial periods of time.

Finally, Counsel raises a potential issue with respect to Father's *pro se* representation at the termination proceeding. **See Anders** Brief at 21-22. However, Counsel asserts any claim would be frivolous because Father refused representation by a court-appointed attorney. **See id.**; **see also** N.T.,

9/13/24, at 7, 9 (Father testified that he had "access to funds" for an attorney and that he "needed a paid attorney, not a Public Defender."). Upon review, we agree and conclude Father waived his right to court-appointed counsel. We note that Father received proper notice of the involuntary termination petition that included notifying him of his right to an attorney and providing instructions on how to obtain a court-appointed attorney. **See In re A.R.**, 125 A.3d 420, 424-25 (Pa. Super. 2015) (holding that a parent waives his right to counsel pursuant to 23 Pa.C.S.A. 2313(a.1) if he fails to take action after he is provided with clear instructions on how to petition for counsel).

We now examine Father's *pro se* allegations. In his *pro se* filing, Father either (1) attempts to relitigate the court's findings; (2) alleges due process violations due to the appearance of bias from the court; and/or (3) takes issue with Z.M.F. not being placed with his brother or his aunt. **See** Father's Response, 11/3/25. Z.M.F. was placed with a kinship resource on her maternal side. **See** N.T., 9/23/24, at 107.

Father's first claim fails given our conclusion that the termination of his parental rights pursuant to Section 2511(a)(1) and (b) is thoroughly supported by the record evidence. With respect to his due process argument, Father conflates judicial familiarity with judicial bias. He argues that he was "not heard" at the hearing because the Honorable Andrea Marceca Strong "appeared to have already made her decision" regarding the termination proceeding. Father's Response at 1 (unpaginated). Our review of the record

does not reveal any indication of bias or prejudice by Judge Strong. Rather, the record indicates only that Judge Strong was well-acquainted with the underlying factual and procedural history of this matter because she also presided over the entirety of Z.M.F.'s dependency proceedings. The mere fact that Judge Strong also presided over Z.M.F.'s dependency case, which Father never participated in, does not amount to judicial bias. **See In re S.H.**, 879 A.2d 802, 808 (Pa. Super. 2005) ("It is unsupportable that an experienced trial judge is incapable of making factual determinations and legal findings in regard to the same child at different hearings ... without being subject to bias or prejudice.") (citing **In re Quick**, 559 A.2d 42, 46 (Pa. Super. 1989)).

To the extent that Father's argument pertains to the issue of due process, we note that "[d]ue process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." **In re Adoption of J.N.F.**, 887 A.2d 775, 781 (Pa. Super. 2005). There is no claim in this case that Father was not provided with adequate notice, as evinced by his participation in the termination proceeding. There is no question that Father was given an opportunity to be heard, as the record shows that he testified, extensively cross and recross-examined CYF's witnesses, and lodged

objections at the hearing.[7]  *See* N.T., 9/23/24, at 10-26, 34-37, 41, 61-79, 80-85, 90-101.

Father's final contention concerns CYF's failure to place Z.M.F. with members of his family, namely his brother or his aunt.  *See* Father's Response at 1-2 (unpaginated).  Father baldly asserts that the court was legally bound to place Z.M.F. in a kinship foster placement with his family.  *See id.*  Aside from misapprehending the law, we reiterate that Foster Parent was a kinship resource provided to CYF by Mother.  *See* N.T., 9/23/24, at 107.  We agree with the orphans' court's conclusion regarding Father's request that Z.M.F. be placed with one of his family members, as follows.

> [T]hat is not an issue before me today.  That issue is something you could have addressed in the underlying dependency action, but today we are dealing with the orphans' court proceeding, and the only issue before me is the petition to involuntarily terminate your parental rights, which focuses on your conduct, not the conduct of your family, not the conduct of the agency.

N.T., 9/23/24, at 85-86; *see also* 23 Pa.C.S.A. § 2511; *Interest of S.S.*, 252 A.3d 681, 688 (Pa. Super. 2021) (holding that, although related, dependency proceedings and termination proceedings are two separate, distinct proceedings).

_____

[7] Father also argues that he was not heard because Judge Strong rejected his excuses as to why he abandoned Z.M.F.  *See* Father's Response at 1-2 (unpaginated).  However, credibility determinations are squarely within the orphans' court's discretion.  *See In re R.A.M.N.*, 230 A.3d 423, 427 (Pa. Super. 2020) (the orphans' court "is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations[.]") (citation omitted).

In conclusion, we have followed the necessary procedure in reviewing Counsel's **Anders** brief and Father's *pro se* response. Based upon the foregoing, we conclude that the claims raised by Counsel are frivolous. Additionally, Father's *pro se* claims are also frivolous. Thus, we affirm the decree involuntarily terminating Father's parental rights to Z.M.F. pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) and grant Counsel's application to withdraw from her representation of Father.

Decree affirmed. Application to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/17/2026